## TATSUUMA KISEN KABUSHIKI KAISHA v. ROBERT DOLLAR CO.

Circuit Court of Appeals, Ninth Circuit.
March 18, 1929.

No. 5633.

Cosgrove & Terhune, of Seattle, Wash., and McCamant & Thompson, of Portland, Or., for appellant.

John Ambler, of Seattle, Wash., and Hugh Montgomery, of San Francisco, Cal., for appellee.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

BEAN, District Judge. This is a proceeding in rem brought by the Robert Dollar Company against the Japanese steamer Hakutatsu Maru. It is alleged in the libel: That on May 27, 1925, the libelant shipped on the Hakutatsu Maru from Vancouver, B. C., to Hongkong, a cargo of lumber, and prepaid the freight thereon. That the shipment arrived in Hongkong on September 13, 1925. Although demanded by libelant, the vessel refused to make delivery until libelant had paid an additional sum of $1,580.68. That the libelant, being in immediate need of the lumber, paid such amount under protest, and it has not been repaid.

The answer admits the shipment as alleged, the arrival at Hongkong, the refusal to

make delivery until the payment of the additional sum, the payment of the same under protest, and for an affirmative defense avers that the goods mentioned in the libel were shipped under a bill of lading which provides: "(8) If the vessel be prevented by stress of weather, war, blockade, seizure, restraint, riot, strike, lockout, interdict, disease, or any other cause of whatsoever kind from entering said port of delivery on her arrival at or near the same, or from discharging any or all of said merchandise, or if in the judgment of the ship's master or agent it be impracticable to there discharge all or any of said merchandise while the ship be at said port, or for same to be there safely landed if discharged, then, first, all merchandise not discharged may be retained on board vessel and returned to her port of original shipment, or same may at the option of ship's master or agent and at owner's cost and risk be conveyed upon such or any vessel to any other port and thence to said port of delivery; or second, same may be forwarded to and landed and delivered or stored at any port at owner's cost and risk, and carrier shall have a lien on said merchandise, for all expense so incurred, provided however, that if said merchandise or any thereof be so returned to such port of original shipment no additional freight shall be charged, and that delivery or storage of such merchandise at any such other port or on such return to such port of original shipment shall be a final and sufficient delivery."

That shortly after May 27, 1925, the vessel sailed from Vancouver and arrived at Kobe, which was on the usual route to Hongkong, on June 25, 1925, at which time a general strike of unusual violence and much rioting and civil war chaos existed in all Chinese ports, including Hongkong, particularly directed against English and Japanese vessels, and the port of Hongkong was in effect closed, and such condition continued until September 13th, when the goods were delivered. That Kobe was the only remaining near and safe port on the customary trade route at which the vessel might deliver and store the goods. That, upon arriving at Kobe, the master was informed of the conditions existing at Hongkong, and because thereof it was his judgment and that of the agent that it was unsafe and impracticable to proceed to Hongkong or any other Chinese or other port nearer than Kobe, and there attempt to make delivery. That the vessel thereupon retained the goods on board until July 21st, when they were discharged in a warehouse and/or lumber pool at Kobe, there being no other port available safe and nearer to Hongkong, and kept there until August 31st, at which time they were placed on board another vessel for shipment to destination. That the goods arrived at Hongkong September 13th, and were there delivered to the libelant without any charge for carriage. That the claimants were compelled to and did pay for discharging, lightering, storing, and reloading the cargo at Kobe $1,580.68, and under the bill of lading thereby acquired a lien on the cargo.

The libelant excepted to the affirmative matter set up in the answer on the ground that it does not constitute a defense. The exception was sustained, and, the respondent declining to plead further, a decree was entered for the libelant, and the respondent appeals.

It is urged by the appellant that the matter here involved is not cognizable in admiralty. But the issue between the parties cannot be determined without a consideration and review of the terms of the bill of lading, and, as said by Gibson, District Judge, speaking for the Court of Appeals in 286 F. 918: "From time immemorial the construction of such contracts, and the determination of issues arising out of them, has been part of the duties of courts of admiralty." U. S. Shipping Bd. v. Banque Russo Asiatique. See, also, The G. A. Tomlinson (D. C.) 279 F. 786; The John Francis (D. C.) 184 F. 746; The Lake Eckhart (D. C.) 31 F.(2d) 804, 1924 A. M. C. 498.

We are therefore called upon to consider the ruling of the court in sustaining the exception to the answer.

For the purposes of this question the averments of the answer must be, and are deemed to be, true. The undertaking of a ship to deliver goods as evidenced by the bill of lading is, of course, absolute, except so far as it may be relieved either because the venture was frustrated or by the terms of the bill of lading. The Poznan (D. C.) 276 F. 418. It is not contended that the voyage in question was frustrated but that the vessel complied with the contract in discharging at Kobe, under the circumstances.

There are two stipulations in the bill of lading under which the prompt delivery is excused. One is that, if the vessel be prevented by stress of weather, riots, war, strikes, etc., from entering the port of destination on her arrival at or near thereto, or from discharging any or all of the merchandise, and the other is, if, in the judgment

of the master or agent, it is impracticable to discharge all or any of the merchandise while the ship "be at the port of destination." One depends on the facts, and the other the exercise of judgment by the master and agent. We are only concerned at this time with the first. The second has no application, unless the ship is at port of destination.

■ The appellant contends that, in view of conditions existing at Hongkong, the vessel was at or near such port within the meaning of the bill of lading when she arrived ' at Kobe, while the appellee insists that such provisions were intended to apply only when the difficulty mentioned therein existed upon the vessel arriving at the port of entry, or as near thereto as she could safely go. But it seems to us that appellee's position calls for a very narrow construction of the bill of lading. What will be deemed at or near the port of delivery within the meaning thereof must, of course, depend upon the facts of each case. The object of the stipulation was to enable the master to guard against obstacles which might prevent his vessel from making her destination in due course. It is not to be supposed that it was intended to apply only if the vessel actually arrived safely at the port of destination, if the master had, prior to that time, reliable information the port was closed, on account of strikes, riots, etc., and it would therefore be impracticable and unsafe for him to enter the port or attempt to discharge his cargo.

If the averments of the answer are true, and we must so assume, the master's conduct in discharging the cargo at Kobe was, we think, justified under the circumstances that confronted him. 26 L. T. R. 446; 8 Aspinwald (N. S.) 181; The Kronprinzessin Cecilie, 244 U. S. 12, 37 S. Ct. 490, 61 L. Ed. 960. He was not required to do a vain and useless thing. It is alleged that, when the vessel arrived at Kobe, the port of Hongkong was substantially closed against Japanese vessels, and they were prevented from entering the port or discharging the cargo therein, and Kobe was the nearest safe port. There was therefore at least a constructive prevention of such a vessel entering and discharging at Hongkong, or from entering such port from the time the vessel was at Kobe, until September following. If the vessel had proceeded on her voyage, her cargo could not have been landed at destination, and she would have been compelled to either retain it on board or return to Kobe for discharging.

We are of the opinion that, under the circumstances as disclosed in the answer, if true, the master was not required to subject his vessel, crew, and cargo to the hazards and perils of a useless voyage of 1,300 miles and return.

We conclude that the court below erred in sustaining the exception to the answer, and its judgment must be reversed, and the case remanded, with directions to overrule the exception, and for a trial on the merits.