KROLL et al.

v.

SILVER LINE, Limited et al.

No. 25461–G.

United States District Court,
N. D. California, S. D.

Nov. 25, 1953.

which ones were still working cargo. Referring to Clause 9 of the bill of lading they asked the Captain where he chose to proceed and his estimated time of arrival. The Captain radioed back that he chose to proceed to Vancouver. Upon being notified of the port of destination the libelants requested that the cargo be discharged at a port nearer to Los Angeles. The carrier was notified by the shipper that under the privileges of the bill of lading, discharge of the cargo should be made at the nearest open port, which was Tacoma. The vessel did discharge the cargo at Tacoma. At that time there appeared no possibility whatsoever of a resumption of operations at the port of Los Angeles, or any port nearer than Tacoma. Libelants accepted their cargo at Tacoma and arranged and paid for rail transportation to Los Angeles, the shipment arriving in Los Angeles long before the strike was ended. They now sue to recover the cost of this transportation.

The libelant's argument for recovery consists principally of three points:

1. That the diversion of the vessel from Los Angeles to Tacoma was a "deviation".

2. That this "deviation" was prima facie unreasonable under the provisions of Section 4(4) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(4), since they contend it was for "the purpose of loading or unloading cargo".

3. That the diversion was unreasonable because the Master is alleged to have had insufficient information.

On the first issue, the question is whether the action was a deviation at all. This must be determined by an examination of the bill of lading to see if it called for delivery to Los Angeles only, or whether it allowed delivery elsewhere. The bill of lading clearly states that delivery to designation was subject to certain exceptions and conditions. Paragraph 9 of the bill of lading deals with the exact situation that arose in the instant case. Omitting inapplicable provisions, this term of the contract says:

Hauerken, St. Clair & Viadro, San Francisco, Cal., for libelants.

Lillick, Geary, Olson, Adams & Charles, San Francisco, Cal., for respondents.

ROCHE, Chief Judge.

There is substantially no dispute on the facts. Libelant's cargo was shipped from Calcutta, India, and during the course of the voyage to the United States the general maritime strike of 1948 commenced. The vessel had on board over 200 separate shipments consigned to various ports along the West coast. Libelant's was one of those scheduled for Los Angeles and was to be unloaded first. After the strike had been in progress for almost three weeks, the vessel's agents radioed the Master informing him as to which ports were closed by the strike and

"If the master be of the opinion that actual or threatened * * * labour disturbances of any kind, strikes, lockouts, stoppages of labour from any cause whatsoever (whether of the carrier's employees or others) * * * will make it unsafe, imprudent or inexpedient for the ship to proceed to or enter * * * the port of discharge * * * the master shall be at liberty in his discretion to change and to proceed by any route direct or indirect, or to deviate * * * to * * * such other port or ports as he may consider safe or advisable under the circumstances, and thereupon when so discharged the cargo shall be at the risk and expense of the shippers and/or receivers thereof, and the vessel, her owners, agents, and master shall be freed and discharged from any further responsibility in respect thereof * * * such discharge shall be deemed a complete delivery under this contract."

■ Under both American and British Law, diversions from the direct or originally planned route or destination which are expressly permitted by the bill of lading contract are not deviations. Fascolo Margo v. Stag Line, 38 Ll.L.Rep. at p. 276; Tatsuuma Kisen Kabushiki Kaisha v. Robert Dollar Co., 9 Cir., 31 F.2d 401; See also, The Asbjorn, N.D. Cal.1944, 1945 A.M.C. 103; Scrutton on Charterparties and Bills of Lading, 14th Ed. p. 315, note 2; pp. 500, 501.

■ It is difficult to imagine how a contract could be written which would more explicitly cover the exact facts and issue in this case. The complete bill of lading is the "contract voyage". Since the diversion to the nearest open port, in view of the strike which arose, was expressly sanctioned by the contract itself, the rerouting to Tacoma cannot be deemed a deviation.

■ Libelants contend that they have made a prima facie showing of a deviation by their citation of Section 4(4) of the Carriage of Goods by Sea Act. This act provides that a deviation "for the purpose of loading or unloading cargo * * * shall, prima facie, be regarded as unreasonable." In support of this contention libelants cite The Steel Inventor, D.C.Md., 35 F.Supp. 986, 997; and Knauth on Ocean Bills of Lading, p. 157, to show that this shipment comes under American Law and under this Act. These citations are correct and would fully support the plaintiff except for the fact that this section only applies when it has first been shown that a "deviation" in fact occurred. As stated supra, there was no deviation from the route allowed in the bill of lading. Also, the diversion to Tacoma was made because of the strike and because libelants and others preferred to receive their cargo there rather than at Vancouver, the only other open port.

■■ The claim that the diversion to Tacoma was unreasonable is without merit. There was a general maritime strike in all ports with the exception of Vancouver and Tacoma. Tacoma was the nearest open port where cargo could be unloaded. No one had any way of knowing how long the strike would last. If the vessel had entered a strike-bound port it could not have unloaded or have been of any further use to any one until the strike ended. Therefore the vessel proceeded to the nearest open port, rather than to Los Angeles where it would have been impossible to make early discharge of all the other shipments aboard, many of which were consigned to Vancouver and Seattle. The decision of a carrier in these circumstances must be made with due regard to the interests of *all* cargo on board and the vessel as well—not with regard solely of any one shipment. The Styria, 186 U.S. 1, 22 S. Ct. 731, 46 L.Ed. 1027; Accinanto v. Cosmopolitan Shipping, D.C.Md., 99 F. Supp. 261, 1951 A.M.C. 1464 at page 1480; See also, Scrutton on Charterparties and Bills of Lading, 14th Ed. p. 501. If the vessel had proceeded to Los Angeles to wait out the strike, she would have unquestionably become liable for damages to all other consignees of cargo

for delays in delivery that could have been avoided.

Since what was done was in strict compliance with the terms of the contract there was no deviation from the contract voyage at all. It was the duty of the libelants to pay the costs which they had agreed to undertake under the terms of the standard contract provision. They now seek to void that agreement. They have shown no basis, in law or in reason, why they should be permitted to do so.

It Is Ordered that there be entered herein, upon findings of fact and conclusions of law, judgment in favor of respondents. Each party to pay his own costs.